J-A15014-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN P. HEANEY III | |
| Appellant | No. 1419 EDA 2013 |

Appeal from the Judgment of Sentence January 14, 2013
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0002982-2011

BEFORE:  PANELLA, J., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 20, 2014**

Appellant, John P. Heaney III, appeals from the judgment of sentence entered on January 14, 2013, by the Honorable Paula A. Roscioli, Court of Common Pleas of Northampton County. After careful review, we affirm Heaney's convictions, but vacate the award of restitution and remand for a hearing.

On July 1, 2011, while driving on Route 512 in Bangor, Pennsylvania, Heaney's truck crossed into the lane of opposing traffic and struck a group of motorcyclists, killing two instantly and injuring four others. *See* N.T., Trial, 12/3/12, at 35, 40; N.T., Trial, 12/4/12, at 10-11, 16, 22, 28, 45.

Earlier that day, Heaney went fishing with a friend and had lunch at a local grill, where he had a few beers. *See* N.T., Trial, 12/5/12, at 5-6, 25-26. After leaving his friend, Heaney went to the Jacksonian Democratic Club,

where he had a few vodka tonics. *See* N.T., Trial, 12/5/12, at 7-8; N.T., Trial, 12/4/12, at 170-71, 190-92. The bartenders at the club did not notice Heaney exhibit any signs of intoxication. *See* N.T., Trial, 12/4/12, at 173, 196. Upon leaving the club, Heaney's friend noticed that Heaney appeared sick, but not intoxicated. *See* N.T., Trial 12/5/12, at 12. When questioned by the police about his activities that day, Heaney stated that he had gone fishing with a friend and had a beer at lunch afterwards. *See* N.T., Trial, 12/4/12, at 126. However, he failed to tell the police about his time at the Jacksonian Club. *See id*.

At the scene of the accident, some of the officers did not notice any signs of intoxication or unusual behavior when observing Heaney. *See id*., at 111-14, 149-50. However, several other officers did note an odor of alcohol on Heaney and observed bloodshot, glassy eyes. *See id*., at 124, 161; N.T., Trial, 12/5/12, at 45, 91; N.T., Trial, 12/6/12, at 6. Officer Jones administered field sobriety tests to Heaney at the scene. *See* N.T., Trial 12/5/12, at 50-52. Heaney failed all the tests, and therefore, Officer Jones placed him under arrest for suspicion of driving under the influence. *See id*.

Officer Hughes later processed Heaney at the DUI center, where he noticed bloodshot, glassy eyes and an odor of alcohol. *See* N.T., Trial, 12/5/12, at 91. Furthermore, Heaney refused to give a blood sample for testing. *See id*., at 87. Heaney maintained that he was not intoxicated at the time of the accident. *See* N.T., Trial, 12/7/12, at 76. Rather, Heaney

claimed that due to his prior gastric bypass surgery, his consumption of a substantial amount of Gatorade on the day of the accident sent him into an episode of hypoglycemia, which impaired his abilities and caused the accident. *See id*., at 8-9, 134-37; N.T., Trial, 12/6/12, at 158.

Following a seven day trial, a jury convicted Heaney of one count of driving under the influence–general impairment/incapable of safe driving;[1] two counts of involuntary manslaughter;[2] four counts of recklessly endangering another person;[3] one count of reckless driving;[4] one count of careless driving[5]; and one count of driving on roadways laned for traffic – single lane.[6]

At sentencing, Heaney received 30 days to six months of incarceration, 50 hours of community service, one year license suspension, and a $300 fine for driving under the influence; 16 months to 32 months of incarceration for each count of involuntary manslaughter; one month to 12 months of incarceration for each count of recklessly endangering another person; a $300 fine for reckless driving; a $200 fine for careless driving; and a $300 fine for driving on roadways laned for traffic. The trial court imposed the above sentences consecutively, for an aggregate imprisonment term of 37

_____

[1] 75 Pa.C.S.A. § 3802(a)(1)
[2] 18 Pa.C.S.A. § 2504(b)
[3] 18 Pa.C.S.A. § 2705
[4] 75 PA.C.S.A. § 3736
[5] 75 Pa.C.S.A. § 3714
[6] 75 Pa.C.S.A. § 3309

months to 118 months. Additionally, the trial court ordered Heaney to pay restitution of $194,226.59.

Heaney then filed post sentence motions, which the court granted in part and denied in part. The trial court amended its sentence to remove the costs and fines imposed for reckless driving and careless driving, as the two merge together under the offense of recklessly endangering another person. Additionally, the trial court reduced the fine of driving on roadways laned for traffic from $200 to $25, as dictated per statute. In all other respects, it denied the post-sentence motions. This timely appeal follows.

On appeal, Heaney first claims the evidence was insufficient to support his convictions. Our standard of review for sufficiency is "whether the evidence admitted at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, supports all of the elements of the offense beyond a reasonable doubt." ***Commonwealth v. Cooper***, 941 A.2d 655, 662 (Pa. 2007) (citation omitted). This burden of proof may be satisfied through both direct and circumstantial evidence, but circumstantial evidence alone is sufficient. ***See id***. In making this determination, the court may not substitute its own judgment for that of the jury, as it is the fact finder's job to weigh the evidence, determine credibility, and believe all, part, or none of the evidence. ***See id***.

Heaney next claims the verdict was against the weight of the evidence. Our standard of review for a challenge to the weight of the evidence is well settled. We may not substitute our judgment for that of the fact finder, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *See Commonwealth v. Diggs*, 949 A.2d 873, 879 (2008). The trial court may only award a new trial where the verdict is so contrary to the evidence as to shock one's sense of justice. *See id*.

A verdict is said to shock one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Cruz*, 919 A.2d 279, 282 (Pa. Super. 2007) (citation omitted). Our review is thus limited to whether the trial court properly exercised its discretion, and relief is only granted where the facts and inferences of record disclose a palpable abuse of discretion. *See Diggs*, 949 A.2d at 879.

Heaney next challenges the discretionary aspects of his sentence. Specifically, he characterizes the sentence as unreasonable and excessive, and further claims the trial court failed to consider various mitigating factors, considered improper factors, and imposed consecutive rather than concurrent sentences. Our standard of review of a sentence is well settled.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal

absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted).

"The right to appeal the discretionary aspects of a sentence is not absolute." ***Id***., at 1274 (citation omitted). Therefore, "when challenging the discretionary aspects of the sentence imposed, an appellant must present a substantial question as to the inappropriateness of the sentence." ***Id***. ***See also*** Pa.R.A.P. 2119(f). Specifically, an appellant must articulate the manner in which the sentence is inconsistent with a provision of the sentencing code or is contrary to a fundamental norm of the sentencing process. ***See Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013).

Additionally, "Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Id***. (citation omitted). Generally, "[a]ny challenge to the exercise of this discretion ordinarily does not raise a substantial question." ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa. Super. 2011) (citations omitted).

Furthermore, "arguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question whereas a statement that the court failed to consider facts of

record, though necessarily encompassing the factors of § 9721, has been rejected." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1272 n.8 (Pa. Super. 2013). Additionally, where the court had the benefit of a pre-sentence investigation report there is a presumption that the court was aware of information relating to the defendant's character, and considered that information along with the mitigating statutory factors. ***See Commonwealth v. Tirado***, 870 A.2d 362, 368 (Pa. Super. 2005); ***Commonwealth v. Boyer***, 856 A.2d 149, 154 (Pa. Super. 2004), ***aff'd***, 891 A.2d 1265 (Pa. 2006).

Heaney next argues the trial court erred in denying his motion for a mistrial when the jury indicated it was unable to reach a unanimous verdict. Specifically, he claims the jury's request to re-read the criminal charges on numerous occasions demonstrates the jury's confusion. Heaney also asserts the trial court's ***Allen*** charge further confused the jury.

Pennsylvania Rule of Criminal Procedure 605 states, "[w]hen an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa. R. Crim. P. 605. Manifest necessity is a vague concept and the determination of its existence must turn on the facts of the case. ***See Commonwealth v. Walker***, 954 A.2d 1249, 1257 (Pa. Super. 2008); ***see also Commonwealth v. Balog***, 576 A.2d 1092, 1095 (Pa. Super. 1990).

However, the most common circumstance constituting manifest necessity "is the inability of the jury to agree on a verdict such that the jury is hopelessly deadlocked." *Id*. (citations omitted). "Nevertheless, if there is any doubt that a deadlocked jury exists, then manifest necessity for a mistrial is not present." *Id*.

Our standard of review for jury charges, including supplemental jury charges, is whether there is an abuse of discretion. *See Commonwealth v. Greer*, 951 A.2d 346, 354 (Pa. 2008). Whether a jury's deliberation time is proper is "within the sound discretion of the trial court, whose decision will not be disturbed unless there is a showing that the court abused its discretion or that the jury's verdict was the product of coercion or fatigue." *Id*. (citation omitted).

Heaney next claims the trial court erred by denying his motion *in limine* to preclude the testimony of the Commonwealth's expert, Dr. Roslin. Specifically, Heaney argues Dr. Roslin did not express his opinions to a reasonable degree of medical certainty. Thus, by permitting Dr. Roslin to testify, the trial court allowed the jury to render a speculative decision concerning Heaney's sobriety at the time of the accident.

Our standard of review for a motion *in limine* is to apply the scope of review appropriate to the particular evidentiary matter. *See Commonwealth v. Williams*, 91 A.3d 240, 248 (Pa. Super. 2014). Our standard of review of a challenge to the admissibility of evidence is whether

the trial court abused its discretion or committed an error of law. *See id*. "In Pennsylvania, expert testimony is sufficient to support a finding when given with a reasonable degree of medical certainty." *Commonwealth v. Davido*, 868 A.2d 431, 441 (Pa. 2005) (citation omitted). An expert witness must testify that

> in his professional opinion the result in question came from the cause alleged. A less direct expression of opinion falls below the required standard of proof and does not constitute legally competent evidence." In analyzing a challenge to a medical expert's testimony, experts are not required to use "magic words." "Instead, we look to the substance of their testimony to determine whether it meets the requisite standard." Furthermore, an appellate court will not reverse a trial court's determination that a witness is qualified to testify as an expert unless we find an abuse of discretion.

*Id* (citations omitted).

As to the foregoing issues, with the above standards of review in mind, we have reviewed the parties' briefs, the certified record, and the excellent trial court opinions, and we find the trial court has thoroughly addressed those issues. *See* Opinion of the Court, 4/16/13, at 1-35; Rule 1925(a) Opinion, 8/6/13, at 1-39. We adopt that reasoning as our own and affirm on the basis of that opinion.

Lastly, Heaney challenges the restitution imposed and claims he was denied a restitution hearing. An order of "restitution is not simply an award of damages, but, rather, a sentence." *Commonwealth v. Atanasio*, 997 A.2d 1181, 1182-83 (Pa. Super. 2010) (citation omitted). The imposition of restitution is within the sound discretion of the sentencing court and must be

supported by the record. *See **Commonwealth v. Solomon***, 25 A.3d 380, 389 (Pa. Super. 2011). A claim that a restitution order is unsupported by the record is a challenge to the legality of the sentence. *See **Atanasio***, 997 A.2d at 1183. As such, it is a question of law, for which our standard of review is plenary. *See **id***.

We are constrained to vacate the award of restitution. In its opinion filed on April 16, 2013, following the disposition of the post-sentence motions, the trial court, in explaining the award of restitution, noted the following:

> In addition, while counsel for Defendant objected at the time of the sentencing to the manner of the presentation of evidence on restitution, as he had not come prepared to cross examine the victim witness on this issue, *the [c]ourt made it clear that it would hold a later evidentiary hearing at the request of Defendant* so that Defendant could have an opportunity to cross examine them; *to date, Defendant has yet to request a restitution hearing*.

Opinion of the Court, 4/16/13, at 33 (emphasis added). At the time that the trial court wrote that Heaney had not requested a hearing he, in fact, had. ***See*** Rule 1925(a) Opinion, 8/6/13, at 40 n.18 ("At the time we resolved Defendant's post-sentence motions, we did not recognize his request for a restitution hearing contained in paragraph 45 of the post-sentence motions."). As such, the trial court requests, if we find that Heaney is entitled to a hearing, that we "vacate the award of restitution and remand this matter for a new hearing on the proper amount of restitution." ***Id***.

Heaney is entitled to a hearing. Accordingly, we vacate the award of restitution and remand for a hearing.

Judgment of sentence affirmed in part and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2014

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
                                     :      **No. CP-48-CR-2982-2011**

        v.                              :

JOHN P. HEANEY, III,                :

            **Defendant.**         :

## STATEMENT PURSUANT TO
## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)

**AND NOW**, this 6th day of August 2013, this Court having received Defendant's timely Notice of Appeal to the Superior Court of Pennsylvania from our Judgment of Sentence entered on January 14, 2013, made final by the denial of Defendant's post-sentence motions on April 16, 2013, we hereby issue the following statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(a):

On July 13, 2011, the Bangor Borough Police Department charged Defendant with (1) two counts of Homicide by Vehicle While Driving Under the Influence (75 Pa.C.S. § 3735(a)), (2) two counts of Homicide by Vehicle (75 Pa.C.S. § 3732(a)), (3) four counts of Aggravated Assault by Vehicle While Driving Under the Influence (75 Pa.C.S. § 3735.1(a)), (4) four counts of Aggravated Assault by Vehicle (75 Pa.C.S. § 3732.1(a)), (5) two counts of Involuntary Manslaughter (18 Pa.C.S. § 2504(b)), (6) four counts of Recklessly Endangering Another Person (18 Pa.C.S. § 2705), (7) one count of Driving Under the Influence – General Impairment/Incapable of Safe Driving (75 Pa.C.S. § 3802(a)(1)), (8) one count of Reckless Driving (75 Pa.C.S. § 3736),

(9) six counts of Careless Driving (75 Pa.C.S. § 3714), (10) one count of Driving on Roadways Laned for Traffic – Single Lane (75 Pa.C.S. § 3309), and (11) one count of Driving Vehicle at Safe Speed (75 Pa.C.S. § 3361). Magisterial District Judge Todd M. Strohe held a preliminary hearing on September 23, 2011, after which he bound over all of the charges for trial. The Commonwealth filed the Criminal Information in this matter on November 7, 2011, and Defendant was formally arraigned on November 10, 2011.

The Honorable F.P. Kimberly McFadden assigned this case to the undersigned on November 30, 2011. On December 12, 2011, Defendant filed an Omnibus Pre-Trial Motion, which included a Motion to Suppress Evidence. This Court held an evidentiary hearing on the motion on February 3, 2012, after which the parties had the opportunity to file briefs in support of their respective positions. The Commonwealth filed a brief in opposition to the suppression motion on February 24, 2012, and Defendant filed a brief in support of the suppression motion on March 2, 2012. On March 14, 2012, this Court entered an Opinion of the Court and Order denying the Motion to Suppress Evidence.

On November 16, 2012, Defendant filed a Motion In Limine seeking to, *inter alia*, preclude a potential Commonwealth witness, Mitchell S. Roslin, M.D., FACS, from testifying at trial.[1] On the same date, the Commonwealth filed a Motion in Limine.

---

[1] In the motion, Defendant also sought to preclude the Commonwealth from introducing a DVD containing an alleged commercial advertisement advising gastric bypass patients not to drive a motor vehicle after consuming alcohol. (Defendant's Motion in Limine at ¶¶ 44-47.) Defendant withdrew this part of the motion prior to trial. (Transcript of Proceedings, 11-16-12, at 6-7.)

This Court held a jury trial in this case from December 3, 2012 until December 11, 2012. During the trial, the Commonwealth presented evidence showing that, *inter alia*, on July 1, 2011, at approximately 4:48 p.m., Defendant was involved in a motor vehicle accident on State Road 512 in the Borough of Bath, Northampton County, Pennsylvania. The accident occurred between Defendant, who was driving a Dodge Ram pickup truck, and a group of seven motorcyclists at a curve in the road. Defendant's truck was entirely in the motorcyclists' lane of travel at the time of the collision. Because of the nature of the curve in the road, the motorcyclists were unable to see the truck until it was upon them, leaving them unable to avoid the collision. Two of the motorcyclists were killed immediately at the scene of the crash, four were seriously injured, and only the rear-most motorcyclist in the group avoided sustaining any injury. The Commonwealth contended that Defendant was under the influence of alcohol at the time of the accident, and that the resultant impairment of Defendant's ability to drive safely was the cause of the accident. Defendant maintained his innocence and asserted that a sudden hypoglycemic

Regarding the part of the motion seeking to preclude the testimony of Dr. Roslin, Defendant argued that (1) Dr. Roslin failed to express certain opinions in his report to the requisite degree of reasonable medical certainty, (2) even if Dr. Roslin's testimony was relevant, its "limited probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay and waste of time," (3) Dr. Roslin impermissibly referenced and relied upon the inadmissible results of a portable breath test performed by Defendant, (4) Dr. Roslin improperly and impermissibly used "inexact, unfairly prejudicial terminology" in the form of the word, "buzz," to create the impression that Defendant was intoxicated at the time of the accident even though Dr. Roslin did not render an opinion in that regard to a reasonable degree of medical certainty, and (5) some of Dr. Roslin's opinions constituted inadmissible legal opinions. (Motion in Limine at ¶¶ 4-9, 22-43.) Defendant also requested a *Frye* hearing to address whether the scientific evidence forming the basis of Dr. Roslin's opinions had achieved general acceptance in the pertinent scientific community. (*Id.* at ¶¶ 10-21.)

event caused him to black out and drive into the wrong lane of travel immediately before the accident.

On December 11, 2012, the jury found Defendant guilty of one count of Driving Under the Influence – General Impairment/Incapable of Safe Driving, two counts of Involuntary Manslaughter, and four counts of Recklessly Endangering Another Person.[2] On January 11, 2013, Defendant filed a Motion for a New Trial Pursuant to Rule 607(A)(2) of the Pennsylvania Rules of Criminal Procedure and for Bail After Sentencing Pursuant to Rule 521(B) of the Pennsylvania Rules of Criminal Procedure.

This Court convened for a sentencing hearing on January 14, 2013. Prior to sentencing, we denied Defendant's motion for a new trial after hearing argument from the parties. (Transcript of Proceedings, 1-14-13 ("Sentencing Tr."), at 2-14.) We then held a sentencing hearing, after which we imposed sentences of state incarceration of (1) a minimum of 16 months to a maximum of 32 months for each of the two counts of Involuntary Manslaughter, (2) a minimum of 1 month to a maximum of 12 months for each of the four counts of Recklessly Endangering Another Person, and (3) a minimum of 30 days to a maximum of 6 months for the offense of Driving Under the Influence – General Impairment/Incapable of Safe Driving. We imposed all of the sentences

---

[2] The jury acquitted Defendant of the other charges filed against him, including two counts of Homicide by Vehicle While Driving Under the Influence, two counts of Homicide by Vehicle, four counts of Aggravated Assault by Vehicle While Driving Under the Influence, and four counts of Aggravated Assault by Vehicle. Regarding the summary offenses, we found Defendant guilty of one count of Reckless Driving, one count of Careless Driving, and one count of Driving on Roadways Laned for Traffic – Single Lane. We acquitted Defendant of the offense of Driving Vehicle at Safe Speed.

consecutively, resulting in an aggregate sentence of a minimum of 37 months to a maximum of 118 months in a state correctional institution.

Defendant timely filed post-sentence motions on January 24, 2013.[3] The Commonwealth filed an answer to the post-sentence motions on March 19, 2013. On April 16, 2013, we filed an Opinion of the Court and Order in which we (1) amended our sentence of January 14, 2013 by (a) deleting the costs and fines imposed on the charges of Reckless Driving and Careless Driving, and (b) changing the $200.00 fine imposed on the charge of Driving on Roadways Laned for Traffic – Single Lane to a fine of $25.00, and (2) denied the remainder of the post-sentence motions.

On May 15, 2013, this Court received notice of Defendant's timely Notice of Appeal to the Superior Court of Pennsylvania from our Judgment of Sentence entered on January 14, 2013. On that same date, we issued an Order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), directing Defendant to file of record and serve upon the undersigned a concise statement of the errors complained of on appeal, no later than 21 days from the date of that Order. Defendant filed a timely, 21-page concise statement on June 5, 2013. Due to the length of the "concise" statement and its incorporation of arguments raised in previous motions, we have rephrased the issues as follows:

1.      The Commonwealth failed to present sufficient evidence to sustain the conviction for Driving Under the Influence – General Impairment/Incapable

---

[3] The post-sentence motions included a motion for judgment of acquittal, a motion in arrest of judgment, and a motion for reconsideration of his sentence. (Defendant's Post-Sentence Motion Pursuant to Rule 720(B)(1)(a) of the Pennsylvania Rules of Criminal Procedure at ¶¶ 28-45.)

of Safe Driving because the Commonwealth failed to introduce sufficient evidence proving that he was under the influence of alcohol or substantially impaired to a degree that he could not safely operate a motor vehicle at the time of the accident. The Commonwealth also failed to present sufficient evidence to sustain the convictions for Involuntary Manslaughter, Recklessly Endangering Another Person, Reckless Driving, Careless Driving, or Driving on Roadways Laned for Traffic – Single Lane because the Commonwealth did not prove that he acted intentionally or recklessly, or that his conduct was grossly negligent exhibiting a disregard of human life or indifference to the consequences of his actions. (Defendant's Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b) at 1-2, 20-21.)

2. The trial court erred or committed an abuse of discretion by denying Defendant's Motion for a New Trial pursuant to Rule 607(A)(2) of the Pennsylvania Rules of Criminal Procedure because the verdict at trial was against the weight of the evidence. (*Id.* at 2-3.)

3. The trial court erred or committed an abuse of discretion in imposing seven consecutive sentences resulting in a state prison sentence for a minimum of 37 months to a maximum of 118 months. (*Id.* at 3-4, 7-20.)

4. The trial court erred by denying Defendant's motion for a mistrial after the jury foreperson indicated that the jury was unable to reach a unanimous verdict. (*Id.* at 4-5.)

5.     The trial court erred by denying Defendant's Motion in Limine to preclude the testimony of the Commonwealth's expert, Mitchell Roslin, M.D. (*Id.* at 5.)

6.     The trial court erred by imposing restitution in the amount of $194,226.59 and erred by asserting that Defendant failed to request a restitution hearing. (*Id.* at 5-6.)

7.     The trial court erred by denying Count IV of Defendant's Omnibus Pretrial Motion for Relief seeking suppression of Defendant's statements at the accident scene and at the Borough of Bangor police station. (*Id.* at 6-7.)

**I.     The Court Properly Denied Defendant's Motion for Judgment of Acquittal and Motion in Arrest of Judgment Because the Commonwealth Presented Sufficient Evidence to Satisfy Defendant's Convictions**

In his first matter complained of, Defendant contends that we erred in denying his oral motion for judgment of acquittal raised after all of the evidence was presented in accordance with Rule 606(A)(2) of the Pennsylvania Rules of Criminal Procedure ("Pa.R.Crim.P."), *see* Transcript of Proceedings, Day VI, 12-10-12 ("Day VI Tr."), at 4-6, and his written motions in arrest of judgment and for judgment of acquittal that were included in his written post-sentence motions in accordance with Rule 720(B)(1)(a) of the Pennsylvania Rules of Criminal Procedure.     More specifically, Defendant argues that the Commonwealth failed to present sufficient evidence to convict him of Driving Under the Influence – General Impairment/Incapable of Safe Driving, Involuntary Manslaughter, Recklessly Endangering Another Person, Reckless Driving, Careless Driving, or Driving on Roadways Laned for Traffic – Single

Lane. Concerning the offense of Driving Under the Influence – General Impairment/Incapable of Safe Driving, Defendant asserts that the Commonwealth failed to introduce sufficient evidence proving that he was under the influence of alcohol or substantially impaired to a degree that he could not safely operate a motor vehicle at the time of the accident. In regard to the other offenses, Defendant claims that the Commonwealth failed to show that he acted intentionally or recklessly, or that his conduct was grossly negligent exhibiting a disregard of human life or indifference to the consequences of his actions.

In his ninth matter complained of, Defendant repeats his assertion that the convictions were not supported by sufficient evidence, and he claims that the convictions were the result of the jury's confusion about the elements of these offenses, sympathy for the victims and their families, and the jurors' attempt to compromise to avoid a hung jury.

We respectfully submit that Defendant's contentions relating to the sufficiency of the evidence presented at trial lack merit. We thoroughly and properly addressed Defendant's claims regarding the sufficiency of the evidence presented to support the convictions in this case in pages 3 through 19 of our April 16, 2013 Opinion of the Court and Order, which resolved Defendant's post-sentence motions. As such, the April 16, 2013 Opinion of the Court and Order is the place in the record where the appellate court may review our reasons for denying Defendant's motion for judgment of acquittal and motion in arrest of judgment.

We also note that there is no evidence in the record to support his claim that the jury reached a verdict in this case merely due to sympathy for the victims. As for Defendant's assertions that the jury was confused about the elements of the offenses or that they somehow reached a compromise verdict after the Court's *Allen* charge, we have addressed Defendant's claims relating to the jury's deliberations in Part IV of this opinion. Based on our discussion therein, we submit that verdict in this case was not due to jury confusion or the desire to reach a compromise verdict, especially considering that the Commonwealth produced sufficient evidence to sustain the convictions.

## II. The Court Properly Denied Defendant's Motion for a New Trial Because the Verdict Was Not Against the Weight of the Evidence

In his second matter complained of, Defendant asserts that the Court erred in denying his Motion for a New Trial Pursuant to Rule 607(A)(2) of the Pennsylvania Rules of Criminal Procedure because the verdict at trial was against the weight of the evidence. In general, Defendant argues that the overwhelming majority of the credible evidence presented at trial demonstrated that he was not intoxicated, substantially impaired, or otherwise incapable of safe driving at the time of the accident. In addition, Defendant contends that the Court erred by denying the motion for a new trial and allegedly relying solely on the opinion of Officer Kevin Jones that Defendant appeared to be intoxicated. As discussed below, we did not abuse our discretion in denying Defendant's motion for a new trial.

Regarding weight of the evidence claims, the scope of review for the appellate court in evaluating the weight of the evidence is well established:

> [O]ur scope of review for such a claim is very narrow. The determination of whether to grant a new trial because the verdict is against the weight of the evidence rests within the discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record. A claim that the evidence presented at trial was contradictory and unable to support the verdict requires the grant of a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Lyons*, 833 A.2d 245, 259 (Pa. Super. 2003) (citation omitted).

Where evidence conflicts, it is the sole province of the fact-finder to determine credibility and to believe all, part or none of the evidence. *Commonwealth v. Hlatky*, 626 A.2d 575, 580 (Pa. Super. 1993). Moreover,

> [a] motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations and quotations omitted).

Contrary to Defendant's contention, the verdict at trial was not against the weight of the evidence. In the first instance, although Defendant emphasizes the number of witnesses that allegedly failed to testify that he was intoxicated at the time of the accident, he ignores that a number of witnesses testified that at least a slight odor emanated from his breath. Those witnesses, included, but were not limited to, (1) Christopher Finan, Jr. ("EMT Finan"), the emergency medical technician that evaluated Defendant at the accident scene, (2) James Hughes, the processor at the Northampton County DUI Processing Center, (3) Officer Timothy Cooper of the City of Bethlehem Police Department, the individual that completed the DUI Influence Report, and (4) Officer Michael Flaherty of multiple police departments, including the East Bangor Police Department, who observed Defendant and spoke to him at the accident scene. (Transcript of Proceedings, Day II, 12-4-12 ("Day II Tr."), at 145, 156, 160-61; Transcript of Proceedings, Day III, 12-5-12 ("Day III Tr."), at 82, 91; Transcript of Proceedings, Day IV, 12-6-12 ("Day IV Tr."), at 6.)[4] In addition, Mr. Hughes and Officer Cooper testified that Defendant had bloodshot and glassy eyes. (Day III Tr. at 91; Day IV Tr. at 6.) Thus, although none of these witnesses opined that Defendant was visibly intoxicated or unable to safely drive a vehicle, they did testify that Defendant exhibited signs of intoxication. Furthermore, in his argument Defendant omits any reference to the consciousness of guilt

---

[4] Officer Flaherty also noticed a combination of an odor of alcohol with an odor of gum or candy. (Day II Tr. at 124.)

demonstrated by his refusal to submit to a blood draw to determine his blood alcohol content and his failure to tell the police that he was at the Jacksonian Democratic Club drinking alcohol just prior to the accident.[5]

Defendant also ignores the testimony relating to the manner in which he was driving his truck immediately prior to the accident; although, we understand that Defendant attempts to excuse his erratic driving by blaming it on a sudden hypoglycemic attack. Defendant's vehicle was entirely over the double yellow line and in the wrong lane of travel when he struck the motorcycle group. (Transcript of Proceedings, Day I, 12-3-12 ("Day I Tr."), at 35, 40-42.) Also, Defendant's vehicle was fishtailing just prior to the collision. (Id. at 40, 51; Day II Tr. at 9.) The erratic manner of Defendant's driving was an important consideration in evaluating whether he was incapable of safely driving his vehicle due to intoxication. See Commonwealth v. Montini, 712 A.2d 761, 768 (Pa. Super. 1998) (indicating that observations of defendant operating vehicle in erratic manner can be considered in analyzing whether defendant was incapable of safe driving).

As for the testimony of Officer Kevin Jones, Defendant attacks his testimony because, inter alia, he (1) did not know about Defendant's medical history, (2) allegedly relied upon inaccurate information about how much alcohol Defendant consumed prior to the accident, (3) could not differentiate between the symptoms of a hypoglycemic attack from the symptoms of alcohol intoxication, (4) did not recognize or appreciate the effects that the shock and

---

[5] EMT Finan also testified that Defendant commenced a finger-to-nose field sobriety test in front of him without being prompted to do so. (Day II Tr. at 160.)

trauma of the accident had upon Defendant, (5) erroneously believed there was a correlation between the strength of an odor of alcohol upon an individual with that individual's blood alcohol content, and (6) altered his testimony from the preliminary hearing about Defendant's performance during the field sobriety tests. We respectfully submit that Defendant's attacks on the weight attributable to Officer Jones' testimony are misplaced and, contrary to Defendant's contention, Officer Jones' testimony was entitled to significant weight in this case.

Concerning Officer Jones' testimony itself, he testified that he had previously arrested approximately 30 to 40 individuals for driving under the influence of alcohol. (Day III Tr. at 41-42.) He also attended training on conducting field sobriety tests provided by the National Highway Safety Commission and, approximately one month prior to trial, he was recertified on conducting those tests. (*Id.* at 42, 43.)

Officer Jones testified that upon his arrival at the scene, he was responsible for speaking to Defendant. (*Id.* at 44-45.) During his initial interaction with Defendant, Officer Jones observed that Defendant had glassy, bloodshot eyes and had an odor of alcoholic beverage emanating from his breath. (*Id.* at 45, 70-71, 75.) Based on these observations, Officer Jones asked Defendant if he would perform field sobriety tests and Defendant consented to perform the tests. (*Id.* at 45-46.)

Once Defendant consented, Officer Jones had Defendant perform the finger-to-nose, walk-and-turn, and one-legged-stand tests along the roadway of

Route 512. (*Id.* at 46, 48.)[6] During the walk-and-turn test, Officer Jones observed that Defendant was raising his arms, missed two heel-to-toe steps, and was not able to stand on the line during his first step. (*Id.* at 50, 51.) As for the one-legged-stand test, Officer Jones indicated that Defendant raised his arms further than six inches from his body and was only able to stand for 15 seconds instead of the full 30 seconds. (*Id.* at 51.) Based on, *inter alia*, his observations of Defendant and Defendant's performance during the field sobriety tests, Officer Jones opined that Defendant was under the influence of alcohol and incapable of safely driving an automobile. (*Id.* at 54.)

While Defendant goes to great lengths in attempting to discredit Officer Jones and references the testimony of other witnesses indicating that Defendant was not visibly intoxicated, Defendant ignores the fact that Officer Jones was the **only** officer specifically designated at the accident scene to assess whether Defendant was under the influence of alcohol. Regarding Officer Jones' lack of knowledge about Defendant's medical history, Defendant correctly points out that Officer Jones was unaware of Defendant's medical history and did not gather any medical information from other officers at the accident scene prior to having Defendant perform the field sobriety tests. (Day III Tr. at 62-64.) Nonetheless, Officer Jones attempted to determine whether Defendant had any injuries or if he had any medical conditions that would have prevented him from performing the tests. (*Id.* at 60, 62.) Despite Officer Jones' inquiry, Defendant

---

[6] The field sobriety tests were recorded and the video was played before the jury. (Day III Tr. at 48.)

did not inform him of any disabilities, conditions, or injuries that would have prevented him from performing the tests. (*Id.*)

Additionally, although Officer Jones admitted that he could not differentiate between the symptoms of a hypoglycemic attack from the symptoms of alcohol consumption, this would not warrant placing little weight on his testimony. Instead, it would merely be one of the pieces of evidence for the jury to fully evaluate Officer Jones' testimony in the context of the positions offered by the Commonwealth and the defense.

As for Defendant's claim that Officer Jones relied upon inaccurate information about the amount of alcohol he consumed prior to the accident, we could not find any reference in the record to said inaccurate information. Nonetheless, even if Officer Jones did mention (inaccurately or otherwise) the precise amount of alcohol Defendant consumed, he did not include the amount of alcohol consumed as part of the reason for determining that Defendant was incapable of safe driving at the time of the accident. (Day III Tr. at 54.)

Regarding Defendant's performance during the field sobriety tests, even if Officer Jones' trial testimony differed slightly from his preliminary hearing testimony, this did not necessitate a determination that Officer Jones' trial testimony was not entitled to significant weight. Regardless of which testimony the jury believed was more credible, Defendant did not pass all three field sobriety tests.

We also note that as part of Defendant's weight of the evidence claim, he is essentially asserting that the evidence submitted on his behalf that he

suffered from a sudden hypoglycemic event that incapacitated him or rendered him unconscious just prior to the accident, was entitled to more weight than the Commonwealth's evidence demonstrating his inability to safely operate the vehicle. Defendant testified that he briefly lost consciousness just before the crash, lost control of his bodily movements, and awoke moments later. (Transcript of Proceedings, Day V, 12-7-12 ("Day V Tr."), at 53, 57.) Both Dr. Robert Doll and Dr. Michael Cooperman, expert endocrinologists, testified that, *inter alia*, (1) alcohol played no role in the accident, and (2) Defendant, who is hypoglycemic, suffered from a precipitous drop in his blood sugar rending him unconscious. (Day IV Tr. at 143, 148, 158, 160-61, 165, 168; Day V Tr. at 136, 149, 159.) Dr. Isadore Mihalakis, an expert in forensic pathology, also testified that Defendant's blood alcohol concentration at the time of the accident was 0.008 and he would not have been impaired by alcohol. (Day IV Tr. at 26-36.)

Contrary to Defendant's claim, this testimony was not entitled to such greater weight that to ignore them or to give them equal weight with all the facts would deny justice. More specifically, Dr. Mihalakis admitted that his calculations were based on a typical individual of Defendant's body size, and he could not reach a conclusion about Defendant's specific blood alcohol content after learning that he had gastric bypass surgery. (*Id.* at 49-50, 54.) Dr. Mihalakis also reluctantly admitted that the gastric bypass surgery causes alcohol to absorb more rapidly and metabolize more slowly than in a typical individual. (*Id.* at 47.)

In addition, the testimony of Dr. Doll and Dr. Cooperman was not entitled to great weight because it was based on Defendant's version of events prior to the case, which lacked credibility. In this regard, Defendant reported no incidents of blacking out prior to or since the accident at issue in this case. While at the scene of the accident, Defendant admitted to failing to tell anyone there, or any of the officers later that day, about the medical event that he alleged caused the accident. (Day V Tr. at 107.) Also, although he allegedly lost consciousness, he specifically told EMT Finan that he had not lost consciousness and he was fine. (Day II Tr. at 162.) Moreover, the expert testimony on the issue of accident reconstruction directly conflicted with Defendant's claim that he lost consciousness just prior to the crash and only awoke afterwards to someone beating him about the head. (*Id.* at 49-50.) The Commonwealth's accident reconstructionist testified that the yaw mark was indicative of a volitional steering action immediately prior to the collision. (*Id.* at 63, 66.) Dr. Doll admitted that a person who lost consciousness due to a hypoglycemic event would not be able to actively steer a vehicle. (Day IV Tr. at 177.)

Based on the above discussion, we respectfully submit that Defendant was not entitled to a new trial in this case because certain facts were so clearly of greater weight that to ignore them or to give them equal weight with all the facts would deny justice. Thus, the verdict was not so contrary to the evidence as to shock one's sense of justice.

## III. This Court Did Not Commit a Manifest Abuse of Discretion in Sentencing Defendant

In his third and eighth matters complained of, Defendant contends that we abused our discretion in imposing an aggregate sentence of state confinement of a minimum of 37 months to a maximum of 118 months. Defendant raises a plethora of claims relating to his claim that our sentence was improper. As explained below, we did not manifestly abuse our discretion in imposing the sentence in this case.

The applicable appellate standard of review of a sentencing determination is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (internal citations and quotations omitted). In *Commonwealth v. Walls*, 926 A.2d 957 (2007), the Pennsylvania Supreme Court described the "rationale behind such broad discretion and the concomitantly deferential standard of appellate review" as follows:

> [T]he sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment

that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision.

*Id.* at 961-62 (internal citations and quotations omitted).

By statute, the appellate court must vacate a sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

42 Pa.C.S. § 9781(c). However, "[i]n all other cases the appellate court shall affirm the sentence imposed by the sentencing court." *Id.*

Also, in analyzing a particular sentence, the General Assembly has established four factors that an appellate court must consider: "(1) The nature and circumstances of the offense and the history and characteristics of the defendant[;] (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation[;] (3) The findings upon which the sentence was based[; and], (4) The guidelines promulgated by the commission." *Id.* at § 9781(d). Thus, an appellate court may find a sentence unreasonable after reviewing these four factors. *Walls,* 926 A.2d at 964. Furthermore,

a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit

consideration by the sentencing court of the general standards applicable to sentencing found In Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the Impact on the victim and the community; and the rehabilitative needs of the defendant.

*Id.* (citing 42 Pa.C.S. § 9721(b)).

Before proceeding with our analysis, we must first determine whether Defendant presented a substantial question concerning the propriety of our sentence in this matter. In this regard, we note that there is no absolute right to appeal the discretionary aspects of a sentence. *Commonwealth v. Mouzon*, 812 A.2d 617, 621 (Pa. 2002). Rather, allowance of an appeal raising such a claim will be granted only when the appellate court with initial jurisdiction over such claims determines that there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Id.* "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa. Super. 2005) (internal quotations and citations omitted). The Superior Court determines on a case-by-case basis whether a substantial question exists concerning the propriety of a sentence. *Commonwealth v. McNabb*, 819 A.2d 54, 56 (Pa. Super. 2003).

We respectfully submit that Defendant has failed to present a substantial question warranting review of his sentence in this case. In the first instance, Defendant's claims raised in his third matter complained of, *i.e.* that we

allegedly discriminated against him because he (1) suffers from major depression and NIPHS, (2) exercised his constitutional right to remain silent at the accident scene and while in police custody, and (3) maintained his innocence throughout the trial. We have not located any Pennsylvania appellate decision concluding that these claims raise a substantial question. Additionally, Defendant's claims in his eighth matter complained of are essentially contentions that we should have considered various pieces of evidence as mitigating evidence entitling Defendant to a lesser sentence. This also fails to present a substantial question. *See, e.g., Commonwealth v. Rhoades*, 8 A.3d 912, 918-19 (Pa. Super. 2010) ("[A]n allegation that the sentencing court failed to consider mitigating factors does not raise a substantial question for [appellate] review.").[7]

Nonetheless, presuming that the appellate court finds that Defendant has presented a substantial question warranting appellate review of our sentence, we respectfully submit that we did not commit a manifest abuse of discretion in sentencing him in this case. In this regard, we thoroughly explained our reasons for imposing the aggregate sentence of a minimum of 37 months to a maximum of 118 months during the sentencing hearing in this case. (*See*

---

[7] We recognize that Defendant phrases many of his arguments in terms of errors that we allegedly made in reaching factual determinations based on the evidence presented at trial. Nonetheless, Defendant is essentially arguing that we should have believed all of the evidence in his favor at the expense of the other unfavorable evidence. (*See, e.g.,* Defendant's Post-Sentence Motion Pursuant to Rule 720(B)(1)(a) of the Pennsylvania Rules of Criminal Procedure at ¶¶ 40, 43 (indicating that, as part of Defendant's motion for reconsideration of his sentence, "[t]he trial court ignored all of the aforementioned mitigating medical evidence . . .," and requesting that "he should be sentenced within the mitigated range of the sentencing guidelines for each criminal offense as a result of the substantial mitigation evidence presented by the defense, and corroborated by the Commonwealth's expert witness, at the trial of the within matter").)

Sentencing Tr. at 71-76, 78.) In addition, we further explained our reasons for imposing sentence and addressed almost all of Defendant's contentions contained in his concise statement in pages 20 through 31 of our April 16, 2013 Opinion of the Court and Order resolving his post-sentence motions. Our conclusions, including any credibility determinations, contained therein are wholly supported by the record. We submit that the sentencing transcript and our opinion resolving the post-sentence motions are the places in the record where we address almost all of Defendant's claims concerning his sentence.

As for the claims that we did not specifically address, in his third matter complained of Defendant asserts that we allegedly discriminated against him because he (1) suffers from major depression and NIPHS, and (2) exercised his constitutional right to remain silent at the accident scene and while in police custody.[8] There is no evidence in the record to support either of these claims.

We also note that in regard to Defendant's claim that we discriminated against him for allegedly exercising his right to remain silent at the accident scene, he has not specified how we allegedly discriminated against him or how we used his alleged assertion of his right to remain silent against him. Although Defendant has failed to specify how we discriminated against him, it is possible that Defendant is referring to our reliance on a couple of instances where Defendant seemingly chose to omit details *while speaking to the police* when

_____

[8] Defendant also references the Court allegedly discriminating against him because he supposedly exercised his right to remain silent in his eighth matter complained of. In addition, in his third claim of error, Defendant indicates that we discriminated against him for maintaining his innocence throughout these proceedings. We previously addressed this unsubstantiated and meritless claim in our opinion resolving his post-sentence motions. (*See* 4-16-13 Opinion of the Court at 29-30.)

we provided our reasons for imposing the sentence.[9] More specifically, in our opinion resolving his post-sentence motions, we indicated that although Defendant informed the police what he had been doing prior to the time of the accident, he selectively failed to inform the police that he had just come from a bar and had been consuming alcohol there. We recognize that Defendant did not have to provide any voluntary statements to the police and could have exercised his constitutional right to remain silent, but he voluntarily chose to speak to the police and omitted a significant detail of his day's activities when he did so. His failure to mention having just visited a bar and having consumed alcohol prior to the accident demonstrated a consciousness of guilt and added to an overall lack of credibility concerning his version of events.

Additionally, despite describing volunteering to the police information about some of his physical disabilities, Defendant never informed the police that he had blacked out or experienced any other medical event just prior to the accident. Once again, Defendant was not exercising his right to remain silent when, instead of explaining to the police that he allegedly suffered some sort of

---

[9] We also clearly relied on what Defendant said to the police at the accident scene as part of judging Defendant's credibility and disbelieving his version of events. In this regard, and as pointed out in our April 16, 2013 opinion, during Defendant's interaction with the police at the accident scene, he immediately attempted to place blame for the accident on the victims. (See, e.g., Day I Tr., Testimony of Tammy Morris, at 23 (testifying that she overheard Defendant tell the police "that the bikers came on his side and, that they were probably drunk, and he wasn't drunk); Day II Tr., Testimony of Chief Robert Mulligan, at 88 (testifying that he asked Defendant what happened at accident scene and although Defendant started to respond that he veered a little and the motorcyclists hit him head on, Defendant corrected himself and told Chief Mulligan that motorcyclists veered into him); Day II Tr., Testimony of Chief Robert Mulligan, at 100 & Commonwealth's Exhibit 9 (Defendant's voluntary written statement to East Bangor Police Department in which he states that he was traveling eastbound when "*[he] was struck* by a motorcycle that appeared to be passing" (emphasis added)).) Defendant also immediately started telling the police about his extensive history as a police officer, which we determined was an attempt to curry favor with the other officers.

significant medical event, he decided to falsely accuse the victims of causing the accident.

As shown above, Defendant was not exercising his right to remain silent when he voluntarily decided to talk to the police and omit certain pieces of information. Thus, we respectfully submit that we properly considered the aforementioned evidence in fashioning an appropriate sentence in this case.

## IV. This Court Did Not Abuse Our Discretion in Denying Defendant's Motion for a Mistrial

In his fourth matter complained of, Defendant argues that we erred in denying the "**joint** Motion for Mistrial after the jury foreman advised the Court that the jury was **hopelessly deadlocked**." (Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b) at 4 (emphasis added).) Defendant contends that the jury's requests to have the criminal charges re-read to them on "six" occasions demonstrates that the jurors were "confused." (*Id.*) Defendant also asserts that the Court's *Allen* charge did not eliminate the jury confusion and resulted in a "conflicting, incomprehensible verdict that acquitted [him] of all felony charges, and convicted him of all misdemeanor charges." (*Id.*) Thus, the verdict was "predicated upon impermissible speculation, conjecture, guesswork, and surmise by the jury," which violated Defendant's rights under the United States and Pennsylvania Constitutions. (*Id.* at p. 5.) As discussed below, this allegation of error lacks merit.

Pennsylvania Rule of Criminal Procedure 605 states that "[w]hen an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise the

trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605. Also, "[a] trial court has the authority to abort a trial, and the double jeopardy clause will not prevent a retrial, [i]f the trial court takes all the circumstances into consideration and in its sound discretion finds that there is a manifest necessity for the act, or the ends of public justice would be otherwise defeated." *Commonwealth v. Stewart*, 317 A.2d 616, 619 (Pa. 1974) (citations and internal quotations omitted). However, any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant. *Commonwealth v. Balog*, 576 A.2d 1092, 1095 (Pa. Super. 1990). "The decision to grant a mistrial and the length of the deliberation of a jury is properly left to the sound discretion of the trial judge, and will not be disturbed absent an abuse of that discretion." *Commonwealth v. Young*, 35 A.3d 54, 60 (Pa. Super. 2011) (citations omitted).

> Regarding a finding of manifest necessity,
>
> [o]ur supreme court has intentionally avoided establishing a catalog of situations in which a mistrial is dictated by manifest necessity, and has instead stated that each case must "turn on the particular facts". However, there are certain circumstances in which the courts commonly grant a mistrial for manifest necessity . . . . [T]he most frequently encountered circumstance constituting manifest necessity, and thus justifying discharging a jury without placing the defendant twice in jeopardy, is the inability of the jury to agree on a verdict such that the jury is hopelessly deadlocked. In such cases a mistrial is the natural result of the practical inability of the original tribunal to complete the trial.
>
> Nevertheless, if there is any doubt that a deadlocked jury exists, then manifest necessity for a mistrial is not present.

*Balog*, 576 A.2d at 1095 (internal citations omitted); *see Commonwealth v. Monte*, 329 A.2d 836, 840 (Pa. 1974) (indicating that "a genuine inability of a

Page 25 of 41

jury to agree constitutes a 'manifest necessity' to declare a mistrial over a defendant's objection without offending the defendant's Fifth Amendment rights," and explaining that "[a] genuine inability of a jury to agree upon a verdict occurs if it appears to the trial court that there is no reasonable probability of agreement").

Here, the Commonwealth charged Defendant with seven separate criminal offenses, all but one of which had multiple counts as they pertained to multiple alleged victims. The Court properly instructed the jury on the law pertaining to these offenses and then provided counsel with the opportunity on two occasions to request any further instructions or clarifications before excusing the jury to begin deliberations. (Day VI Tr. at 10-38.) After the jury deliberated for a few hours, the jury requested that the Court re-instruct them on the elements of the seven offenses. (*Id.* at 39-40; Court Exhibit 1.) In accordance with the request, we re-instructed the jury on the charged offenses. (Day VI Tr. at 40-51.)

A while later, the jury indicated that it had a second question relating to the elements for Homicide by Vehicle and Involuntary Manslaughter. (*Id.* at 52; Court Exhibit 2.) The jury also sought to be re-instructed on the charge of Driving Under the Influence – General Impairment/Incapable of Safe Driving. (Day VI Tr. at 52; Court Exhibit 3.) To comply with the jury's requests, we re-instructed the jury on the elements of Homicide by Vehicle, Involuntary Manslaughter, and Driving Under the Influence – General Impairment/Incapable of Safe Driving. (Day VI Tr. at 52-58.)

At approximately 9:39 p.m., after deliberating for approximately eight hours, the jury supplied a note to the Court stating that "[w]e are unable to reach a unanimous decision on all counts," which the foreperson signed. (*Id.* at 58-59; Court Exhibit 4.) During a conference with counsel, Defendant moved for a mistrial. (Day VI Tr. at 59.) Contrary to Defendant's reference in his concise statement, the parties did not "joint[ly]" move for a mistrial. Instead, after Defendant moved for a mistrial, we asked the Commonwealth whether it was in agreement and the Commonwealth stated that it was not in agreement. (*Id.*)

After concluding the conference with counsel, we brought the jury into the courtroom and asked the foreperson whether it would assist the jurors if they concluded deliberations for the day and resumed deliberations in the morning. (*Id.* at 60-61.) In response to our question, the foreperson stated as follows:

> We've had a dead lock [sic] for quite a number of hours. The dead lock [sic] hasn't changed. Maybe tomorrow we will feel better, but tonight I think most of us feel that it's unlikely we're going to make any change tonight, and whether we'll make a change tomorrow, I could not say. But our deadlock has not changed in hours.

(*Id.* at 61.) The foreperson also stated that it would possibly be helpful to resume deliberations in the morning. (*Id.*)

We then asked the jurors to raise their hand if they believed that "coming back tomorrow would be something that would be worthwhile and would be

helpful." (*Id.*) At that point, four jurors, including the foreperson, raised their hands. (*Id.*)[10]

After the jury poll, we had a sidebar conference with counsel during which the Commonwealth indicated that if the jury had reached a unanimous verdict on some, but not all of the counts, the Commonwealth would accept a decision on whichever counts the jury reached a unanimous verdict. (*Id.* at 62.) Defendant opposed the Commonwealth's proposal and again moved for a mistrial. (*Id.*) Since some of the jurors indicated that continuing deliberations in the morning could be fruitful, we excused the jurors for the evening so that they could continue deliberating in the morning.

On Tuesday morning, we read the jury a "dynamite" charge in accord with *Allen v. United States*, 17 S.Ct. 154 (1896) and, in response to another note from the jury, we re-instructed the jury on the elements of Involuntary Manslaughter. (Transcript of Proceedings, Day VII, 12-11-12 ("Day VII Tr."), at 2-6; Court Exhibit 5.) The jury then came back with one final question, asking to be re-instructed on the elements Driving Under the Influence – General Impairment/Incapable of Safe Driving. (Day VII Tr. at 6; Court Exhibit 6.) We re-instructed the jury on those elements and again excused them to resume

---

[10] We recognize that the transcript does not expressly state that four jurors raised their hands. However, even without our recollection of the four individuals raising their hands, the transcript does include references to the four individuals. (*See* Day VI Tr. at 62 (statement by Defendant's counsel that "[e]ight of them look like they don't want to do this. They think it's a waste of time"); *see id.* at 66-67 (Court referencing that "at least a third" of jurors that wanted to resume deliberations in morning, noting foreperson was one of those jurors, and indicating that "three or four other people . . . were raising their hands who still thought [resuming deliberations in the morning] might be helpful).)

their deliberations. (Day VII Tr. at 6-9.) Shortly thereafter, the jury reached a unanimous verdict on all charges. (*Id.* at 9-12.)

We respectfully submit that we did not commit an abuse of discretion in refusing to declare a mistrial when the foreperson indicated that the jury was unable to reach a unanimous decision on all counts. As indicated above, Defendant misrepresents what happened during the deliberations. In the first instance, there was no joint motion by the defense and the Commonwealth for a mistrial. Secondly, the foreperson never stated that the jury was "hopelessly" deadlocked. Instead, although the note from the jury stated that they were unable to reach a unanimous decision on all counts, the foreperson and at least three other jurors believed that continuing deliberations in the morning would potentially result in a unanimous verdict. Thus, manifest necessity did not exist for the Court to declare a mistrial at that time because there was not "a reasonable probability that the jury would not be able to agree" on the charges.

We recognize that at the time Defendant moved for a mistrial, the jury had asked to be reinstructed on the elements for each of the charges on one occasion, and then requested to be reinstructed on three of the charges on a second occasion. Also, as indicated above, the jury had been deliberating for approximately eight hours and it was late in the evening when the foreperson indicated in the jury's note that they had been unable to reach a unanimous verdict. Nonetheless, the length of time of the deliberations in this case was not a reason, in itself, to find that there was manifest necessity to declare a mistrial.

In this regard, we note that

> [t]here are too many variables in the trial of criminal cases which would prevent the formulation of predetermined periods of time for the jury's deliberation. Each case differs in the complexity of the issues presented, the seriousness of the charges, the number of charges to be considered, the amount of testimony to be digested and reviewed, thus requiring the reasonableness of the time for deliberations to be made on a case-by-case basis.

*Commonwealth v. Monte*, 329 A.2d 836, 840 (Pa. 1974).

In this case, the parties had presented more than five days of testimony and more than thirty witnesses. Some of those witnesses were expert witnesses that provided extensive testimony regarding, *inter alia*, accident reconstruction and medical information about hypoglycemia, gastric bypass surgery, and forensic pathology. Based on the evidence presented by these witnesses, the jury had to resolve complex legal issues concerning whether Defendant was intoxicated to the point that he was unable to safely operate his vehicle at the time of the accident or whether he suffered from another event (such as a hypoglycemic episode) that caused him to black out and enter the opposing lane of travel. In addition, the jury had to determine whether the evidence presented satisfied the elements of seven separate criminal offenses (over 19 counts in total) beyond a reasonable doubt. Among those offenses were two offenses graded as felonies of the second degree (Homicide by Vehicle While Driving Under the Influence and Aggravated Assault by Vehicle While Driving Under the Influence), two offenses graded as felonies of the third degree (Homicide by Vehicle and Aggravated Assault by Vehicle), and a misdemeanor of the first degree (Involuntary Manslaughter). As such, the

Page 30 of 41

charges themselves were very serious. Therefore, there was nothing about the nature of the case itself that warranted a determination of manifest necessity simply based on the length of time of the jury's deliberations. *But see id.* (concluding trial court properly found manifest necessity to declare mistrial where only two indictments were submitted for determination, charges were "comparatively minor," issues to be determined were not complex, and "six and one-half hours was a reasonable period in which to accept the jury's conclusion that they were hopelessly deadlocked").

Finally, despite Defendant's contentions to the contrary, there was nothing in the record to indicate that the jurors reached a "conflicting" or "incomprehensible" verdict because the Court denied Defendant's motion for a mistrial. In the first place, even if the verdict was "inconsistent," if there is sufficient evidence to sustain the convictions "under longstanding federal and state law, [the inconsistent verdicts] are allowed to stand." *Commonwealth v. Miller*, 35 A.3d 1206, 1208 (Pa. 2012) (citations omitted). We have already explained that the Commonwealth introduced sufficient evidence to sustain the verdicts in this case. As such, a claim that the verdicts were inconsistent here would not warrant vacating the jury's decision in this case.

In addition, even if the consistency of this verdict was reviewable, we have already noted the complexities in this case and pointed out the jurors' desire to be reinstructed on the law on *four* occasions.[11] Based on the fact that

---

[11] At no point in time did Defendant object to any of our instructions (including the "dynamite" charge), request any additional instructions, or seek clarification of our instructions.

the jurors did not have written instructions before them, it was neither unreasonable nor unexpected for them to ask that the Court reinstruct them on the offenses in the first place, nor was it unreasonable or unexpected for the jurors to ask for reinstruction on some of the offenses on three other instances. Moreover, the verdict, while possibly unanticipated by the parties, was not incomprehensible because the jury could find Defendant guilty of Driving Under the Influence but not find that his intoxication caused the deaths of Keith Michaelson and Michael Zadoyko. Further, the jury could have found that Defendant's conduct operating the vehicle was reckless or grossly negligent when the evidence showed that Defendant's vehicle was fishtailing, crossed over the double yellow line, and continued entirely in the wrong lane of travel prior to crashing into the motorcycle group. (Transcript of Proceedings, Day I, 12-3-12, at 35, 40-42, 51; Transcript of Proceedings, Day II, 12-4-12, at 9.). Therefore, we respectfully submit that there was nothing about our "dynamite" charge that resulted in a conflicting or incomprehensible verdict.

**V.    The Court Did Not Err in Resolving Defendant's Motion in Limine**

In his fifth matter complained of, Defendant contends that we erred by denying his Motion in Limine to preclude Mitchell Roslin, M.D. to testify on behalf of the Commonwealth at trial. Defendant argues that by permitting Dr. Roslin to testify, the Court permitted the jury to render a speculative decision concerning his state of sobriety at the time of the accident. As discussed below, these arguments lack merit.

In Defendant's Motion in Limine, he first asserted that Dr. Roslin did not express his opinions in his report to a reasonable degree of medical certainty. (Motion in Limine at ¶¶ 6-9.) Regarding expert testimony, Rule 702 of the Pennsylvania Rules of Evidence states that

> [I]f scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702 (2012 Ed.).[12] Concerning the sufficiency of an expert's opinion,

> expert testimony is sufficient to support a finding when given with a reasonable degree of medical certainty. See Commonwealth v. Baez, 554 Pa. 66, 720 A.2d 711, 727 (1998). "The expert has to testify ... that in his professional opinion the result in question came from the cause alleged. A less direct expression of opinion falls below the required standard of proof and does not constitute legally competent evidence." Menarde v. Philadelphia Transp. Co., 376 Pa. 497, 103 A.2d 681, 684 (1954). In analyzing a challenge to a medical expert's testimony, experts are not required to use "magic words." Baez, 720 A.2d at 727. "Instead, we look to the substance of their testimony to determine whether it meets the requisite standard." Id. Furthermore, an appellate court will not reverse a trial court's determination that a witness is qualified to testify as an expert unless we find an abuse of discretion. Commonwealth v. Arroyo, 555 Pa. 125, 723 A.2d 162, 171 (1999).

Commonwealth v. Davido, 868 A.2d 431, 441 (Pa. 2005).

Here, Defendant initially based his motion on the information contained in Dr. Roslin's report. Prior to trial, the Commonwealth indicated that it was not going to introduce Dr. Roslin in its case-in-chief; instead, the Commonwealth was seeking to introduce Roslin as a rebuttal witness to rebut the testimony

---

[12] This is the text of Rule 702 at the time of the trial in this matter. We recognize that Rule 702 was amended on January 17, 2013.

from Defendant's expert witnesses. The Commonwealth confirmed this intention during a conference after the first day of trial. (Day I Tr. at 54.)

During this conference, the parties also indicated that they were going to conduct a video deposition of Dr. Roslin. (*Id.*) Since the parties were going to conduct a video deposition, we deferred ruling on the Motion in Limine until the parties completed, and we had an opportunity to review, the video-recorded deposition. (*Id.* at 54-55.)

The parties deposed Dr. Roslin during in the evening on the second day of trial, and we received a copy of the deposition transcript at the conclusion of the fourth day of trial. (Day IV Tr. at 187.) We then reviewed any objections to Dr. Roslin's testimony and ruled on those objections after the Commonwealth and defense had rested. (Day V Tr. at 179-86.)

Although Defendant objected to the certainty of some alleged opinions by Dr. Roslin as those opinions were referenced in his report, Defendant posed only one such objection during Dr. Roslin's deposition.[13] Since we clearly indicated to counsel that we would base any rulings on the deposition testimony, we submit that Defendant has waived most of his claims that we erred in permitting Dr. Roslin to testify due to the lack of certainty in his opinions. *See*

---

[13] The only instance of an objection occurred after Dr. Roslin responded to the following question posed by Defendant's counsel: "You can nod off from eating a Philly cheese steak and your stomach is trying to digest it; couldn't that happen?" (Videotaped Deposition of Mitchell Roslin, M.D., 12-4-12 ("Roslin Dep."), at 75.) As indicated in more detail below, we submit that we properly determined that Defendant opened the door to a less-than-certain answer by Dr. Roslin by asking a question that was wholly speculative.

Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[14]

To the extent that the appellate court were to conclude that Defendant preserved any claims concerning the certainty of Dr. Roslin's testimony, the transcript from his deposition shows that he testified that his opinions were to the requisite degree of medical certainty. (See, e.g., Roslin Dep. at 24-27, 31, 34-35, 92.)[15] In this regard, Dr. Roslin testified that to a reasonable degree of medical certainty that, inter alia, (1) Defendant would have absorbed alcohol differently (i.e. more rapidly) than an individual that did not have gastric bypass surgery, (2) a gastric bypass patient will have a higher blood level of alcohol than an individual that did not have gastric bypass surgery after consuming the same amount of alcohol, and (3) Defendant did not suffer a severe hypoglycemic attack resulting in syncope (i.e. fainting) on the date of the accident. (See Id.)

Defendant's other claim was that Dr. Roslin's testimony was irrelevant and, even if it had some probative value, its allegedly limited probative value was outweighed by the danger or unfair prejudice, confusion of the issues or misleading the jury. (Motion in Limine at ¶¶ 22-25.) This argument also lacks merit.

As indicated above, Dr. Roslin testified in rebuttal of the testimony by Dr. Isadore Mihalakis, Dr. Michael Cooperman, and Dr. Robert Doll. The admission

---

[14] We also note that Defendant did not object to Dr. Roslin's qualifications to testify as an expert in the field of bariatric surgery. (Videotaped Deposition of Mitchell Roslin, M.D., 12-4-12 ("Roslin Dep."), at 16.)

[15] Defendant never objected that any of Dr. Roslin's opinions were outside of the scope of the information provided in his expert report.

of rebuttal testimony is within the sound discretion of the trial court. *See Commonwealth v. Jones*, 610 A.2d 931, 942 (Pa. 1992) (discussing admissibility of rebuttal evidence); *see also Commonwealth v. Reid*, 811 A.2d 530, 550 (Pa. 2002) (explaining that generally, admission of evidence is within sound discretion of trial court). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Commonwealth v. Levanduski*, 907 A.2d 3, 13-14 (Pa. Super. 2006) (*en banc*) (citation omitted).

Also, "[t]he appropriate scope of rebuttal has always been defined according to the evidence that it is offered to rebut." *Commonwealth v. Hughes*, 865 A.2d 761, 797 (Pa. 2004) (citing *Commonwealth v. Hickman*, 309 A.2d 564, 567 (Pa. 1973) ("It is not proper to submit on rebuttal, evidence which does not in fact rebut the opponent's evidence.")). Furthermore, "[i]t is entirely proper for a rebuttal witness to testify about facts which discredit an opponent's witness's opinions." *Mitchell v. Gravely Int'l, Inc.*, 698 A.2d 618, 621 (Pa. Super. 1997) (citation omitted).

"The threshold inquiry for the admission of evidence is whether particular evidence is relevant." *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008) (citations omitted). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." Pa.R.E. 401. Although all relevant evidence is admissible, "evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 402, 403. The term "unfair prejudice" means

> a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. Additionally, when weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence.

*Commonwealth v. Dillon*, 925 A.2d 131, 141 (Pa. 2007) (internal citations and quotations omitted). Nonetheless, "[e]vidence will not be prohibited merely because it is harmful to the [party seeking its exclusion]." *Id.* Instead, "exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Owens*, 929 A.2d 1187, 1191 (Pa. Super. 2007) (citation omitted).

Here, contrary to Defendant's arguments, Dr. Roslin's testimony was relevant rebuttal testimony. As indicated above, Dr. Roslin's testimony rebutted the testimony by Dr. Mihalakis, Dr. Cooperman, and Dr. Doll. Dr. Mihalakis testified in response to a hypothetical question that an individual matching Defendant's profile who consumed the amount of alcohol and food that Defendant consumed prior to the accident would have had a 0.001 blood alcohol level and would not have been impaired at the time of the accident. (Day IV Tr.

at 26-36.)[16] Dr. Mihalakis also testified that alcohol absorbs "somewhat more rapidly" in individuals whom have had gastric bypass surgery. (*Id.* at 43.)

As for Dr. Cooperman, he opined that, *inter alia*, (1) Defendant had noninsulinoma pancreatagenous hypoglycemia syndrome ("NIPHS"), (2) the cause of the crash was "an acute and abrupt episode of hypoglycemia leading to cognitive impairment," (3) Defendant suffered from an "abrupt and acute" drop in blood sugar causing mental confusion and possibly visual confusion and disordered activity, and (4) alcohol played no role in the accident. (Day IV Tr. at 143, 148, 158, 160-61, 165, 168.) Dr. Doll testified that, *inter alia*, (1) alcohol was not the cause of the accident, (2) the cause of the accident was Defendant's hypoglycemia resulting in significant neuroglycopenic difficulties, and (3) Defendant could not have voluntarily controlled or avoided the accident. (Day V Tr. at 136, 149, 159.)

Dr. Roslin's testimony was relevant to rebut the testimony of the three doctors. His testimony concerning the absorption rate of alcohol in gastric bypass patients rebutted Dr. Mihalakis's testimony that alcohol absorbs only "somewhat more rapidly" in those individuals. Additionally, Dr. Roslin specifically rejected Dr. Doll and Dr. Cooperman's opinions that a hypoglycemic event caused the accident.

The probative value of the aforementioned testimony was also not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. As indicated above, Dr. Roslin's opinions were all authored

---

[16] Dr. Mihalakis further testified that even if Defendant's blood alcohol level was doubled to 0.02, he would not have been impaired at the time of the accident. (Day IV Tr. at 49.)

to the requisite degree of medical certainty and there is no indication that they unfairly prejudiced Defendant, confused the issues, or otherwise misled the jury. Simply because Defendant believes that his experts were more believable or that the jury should have (or did) give greater weight to his experts did not create unfair prejudice, confuse the issues, or mislead the jury. Accordingly, for the reasons set forth above, we respectfully submit that we properly permitted Dr. Roslin to testify in rebuttal in this case.[17]

## VI. The Court Did Not Err in Awarding $194,226.59 in Restitution

In his sixth matter complained of, Defendant argues that we erred in ordering him to pay restitution in the amount of $194,226.59. Defendant alleges that we erred by (1) not requiring the Commonwealth to provide

---

[17] In addition to his arguments concerning the certainty of Dr. Roslin's opinions and the relevancy of his testimony (when compared to the potential for unfair prejudice), Defendant was also concerned with, inter alia, Dr. Roslin (1) opining that Defendant was intoxicated at the time of the accident, (2) opining that Defendant was experiencing a "buzz" at the time of the accident, (3) opining that the likely cause of the accident was due to Defendant failing asleep or closing his eyes and then drifting into the opposite lane of travel, and (4) relying on the results of a portable breath test ("PBT") to support his opinion. (Motion in Limine at ¶¶ 8, 26-35; Day I Tr. at 54-55.) Defendant also claimed that Dr. Roslin was going to render an impermissible opinion that would intrude upon the province of the jury. (Motion in Limine at ¶¶ 36-43.)

None of these concerns became an issue requiring resolution for the following reasons: First, Dr. Roslin did not testify that he relied upon a PBT in rendering his opinions. Second, we could not locate any reference to Dr. Roslin using the term "buzz" in his deposition testimony. Third, as to the opinions relating to Defendant's level of intoxication and possibility that he either fell asleep or closed his eyes while driving, neither of those opinions were elicited on direct examination by the Commonwealth. Dr. Roslin never opined that Defendant was intoxicated at the time of the accident, and Defendant brought out on cross-examination that Dr. Roslin was not stating to a reasonable degree of medical certainty that Defendant was intoxicated at the time of the accident. (Roslin Dep. at 40, 45.) Fourth, Defendant (and not the Commonwealth) brought up Dr. Roslin's opinion concerning the possibility that Defendant drifted into the opposing lane of travel after falling asleep or closing his eyes. (Roslin Dep. at 71-76.) Defendant even opened the door to Dr. Roslin discussing this particular opinion by asking him a question that called for a speculative answer. (Id. at 75-76.) Finally, a thorough examination of Dr. Roslin's testimony shows that he did not issue any opinion on the ultimate issue to be decided in the case or otherwise issue an impermissible legal opinion. Instead, his opinions were in direct response to the experts that testified on Defendant's behalf.

documentation of the (a) reasonableness or necessity of any medical care or treatment arising from the July 1, 2011 motor vehicle accident, (b) actual dollar amount paid by each accident victim and insurance carrier for said medical care and treatment, (2) failing to examine the amount of medical bills discharged, forgiven, or written off by the medical and health care providers treating each victim, and (3) pointing out that "Defendant has yet to request a restitution hearing."

When a trial court orders restitution, this restitution "is not simply an award of damages, but, rather, a sentence." *Commonwealth v. C.L.*, 963 A.2d 489, 494 (Pa. Super. 2008) (citation omitted). Thus,

> [a]n appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. *Commonwealth v. Redman*, 864 A.2d 566, 569 (Pa. Super. 2004), *appeal denied*, 583 Pa. 661, 875 A.2d 1074 (2005). "[T]he determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." *Commonwealth v. Hughes*, 986 A.2d 159, 160 (Pa. Super. 2009) (citation omitted).

*Commonwealth v. Atanasio*, 997 A.2d 1181, 1184 (Pa. Super. 2010).

We addressed Defendant's claims relating to the restitution amount in this case in pages 32 and 33 of our April 16, 2013 Opinion of the Court. As such, that is the place in in the record where the appellate court may review our reasons for denying Defendant's post-sentence motion challenging the amount of restitution ordered in this case.[18]

---

[18] At the time we resolved Defendant's post-sentence motions, we did not recognize his request for a restitution hearing contained in paragraph 45 of the post-sentence motions. To the extent the appellate court determines that Defendant is entitled to such a hearing,

## VII. This Court Did Not Err in Denying Defendant's Omnibus Pretrial Motion in the Nature of a Motion to Suppress

For his seventh matter complained of, Defendant alleges that we erred in denying the motion to suppress contained in his Omnibus Pretrial Motion for Relief. The appellate standard of review from denials of suppression motions is "limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. DeJesus*, 860 A.2d 102, 112 (Pa. 2004) (citation omitted).

As indicated above, we resolved Defendant's motion to suppress in an Opinion of the Court and Order entered on March 14, 2012, which is the place in the record where the appellate court may review our reasons for denying Defendant's motion to suppress. We respectfully submit that we properly denied the motion insofar as the factual findings contained in our opinion are supported by the record and our legal conclusions drawn therefrom are correct.

**BY THE COURT:**

_Paula A Roscioli_
**PAULA A. ROSCIOLI, J.**

---

we respectfully request that the court vacate the award of restitution and remand this matter for a new hearing on the proper amount of restitution.